UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL RUCKEL, Individually
and on Behalf of All Others Similarly
Situated,

                Plaintiff,                      Civil Case No. 17-cv-13536
                                                        Honorable Linda V. Parker

v.

FORD MOTOR COMPANY, JAMES
PATRICK HACKETT, ALAN
MULALLY, MARK FIELDS, and
ROBERT L. SHANKS,

                Defendants.
_____/

## <u>ORDER GRANTING MOTION OF THE FORD INVESTOR GROUP TO: (1) APPOINT LEAD PLAINTIFFS; AND (2) APPROVE LEAD PLAINTIFFS' SELECTION OF COUNSEL</u>

This putative class action lawsuit is filed under the Private Securities

Litigation Reform Act of 1995 ("PSLRA").  The lawsuit asserts violations of

federal law based on alleged false and misleading statements and omissions

concerning Ford Motor Company's business, operations, and prospects.  The

plaintiffs claim the statements and/or omissions concerned flaws in the

manufacturing process, supply chain and/or quality control that resulted in at least

841,000 Ford vehicles being unsafe to drive.  The following movants filed a

motion seeking appointment as lead plaintiffs and appointment of their choice of

lead counsel: (1) James Emerson; (2) the William T. Higgs Trust; (3) Power Holding Corporation; and (4) the November Family Trust DD 5/5/1983 (collectively "the Ford Investor Group").

When enacting the PSLRA, Congress "envisioned that courts still would play an independent, gatekeeping role to implement the [statute]." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 215 (D.D.C. 1999). Thus, although the motion for appointment as lead plaintiffs and lead counsel is unopposed, this Court must evaluate the information before it and assess whether they and their chosen counsel should serve in those capacities.

The PSLRA requires a court to consider any motion filed by a class member seeking to be appointed as lead plaintiff and to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute creates a rebuttable presumption that the most adequate plaintiff is the person who:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-- (aa) will not fairly and adequately protect the interest of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. The PSLRA further provides that once the most adequate plaintiff is selected, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v).

The PSLRA does not provide a methodology for determining which person has "the largest financial interest" in the litigation. In making this determination, however, courts have adopted the four factors outlined by the District Court for the Northern District of Illinois in *Lax v. First Merchants Acceptance Corp.*, No. 97-cv-02715, 1997 WL 461036, at *5 (Aug. 11, 1997). *See, e.g., In re Olsten Corp. Sec. Litig*., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax*); *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03-cv-2166, 2004 WL 3314943, at *3 (N.D. Ohio May 12, 2004) (citing cases recognizing the four-factor inquiry outlined in *Lax*). The *Lax* factors are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (i.e., shares purchased during and retained at the end of the class period); (3) the

total net funds expended during the class period; and (4) the approximate losses suffered during the class period.  *Lax*, 1997 WL 461036, at *5.

Finally, as indicated, the class member seeking lead plaintiff status must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Rule 23 provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  At this stage of the litigation, however, "all that is required is a 'preliminary showing that the lead plaintiff's claims are typical and adequate [of the class]."  *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999); *see also Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) ("Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing. There is no need to require anything more than a preliminary showing at this stage.").

Facing no opposition, the Ford Investor Group benefits from the PSLRA's statutory presumption that they are the most adequate plaintiffs to represent the purported class. They have the largest financial interest in the relief sought (whether considered individually or taken together) and they make a prima facie showing that they satisfy the requirements of Rule 23. Some courts nevertheless have refused or expressed concern about appointing unrelated groups of investors to serve jointly as lead counsel on the basis that doing so "would frustrate the PSLRA's attempt to put a stop to lawsuits by 'professional plaintiffs' and those lawyers who regularly recruit such plaintiffs." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 810-11 (N.D. Ohio 1999); *see also Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1322- (N.D. Ala. 2000) (collecting cases reflecting "tepid acceptance to open hostility" to the suggestion that combinations of unrelated individuals and investors can be aggregated into lead plaintiff groups). The reasons most district courts cite for declining aggregation are not present here, however.

First, the proposed group consists of four investors, which is far smaller than many of the groups courts have found incapable of cooperating to oversee counsel's conduct and control the litigation. Second, collectively the Ford Investor Group has a significant claimed loss resulting from Defendants' purported misconduct: (1) $1,269,231 on a FIFO basis and (2) 1,178,835 on a LIFO basis.

(ECF No. 12 at Pg ID 76.)  As such, they are not the "professional plaintiffs" whose appointment the PSLRA sought to avoid.  *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d at 813-814.  As the district court explained in *Telxon*,

> All professional plaintiffs share one very important characteristic in common …: they have relatively small amounts of money invested in any one security and typically suffer relatively small financial losses.
>
> Reference to the academic literature in existence at the time the PSLRA was passed is useful in understanding the evil Congress perceived and the problems it sought to address with the Act. The problem with "professional plaintiffs" stems from their relatively nominal interest in securities class action litigation *vis a vis* the relatively large interest at stake for their attorney. Whereas the plaintiff with only a few shares of stock might have suffered losses amounting to no more than one hundred dollars, even less in some instances, the attorney's interest generally is much greater because of the aggregation of all claims in the class. This divergence of financial interests creates significant agency costs on a lead plaintiff with respect to his ability to monitor the attorney's conduct during the prosecution of a securities class action.

*Id*.  The Ford Investor Group, unlike investors with a nominal financial interest in the class action, has the incentive to monitor the litigation, control lead counsel, and police any proposed settlement.

For these reasons, the Court concludes that (1) James Emerson; (2) the William T. Higgs Trust; (3) Power Holding Corporation; and (4) the November Family Trust DD 5/5/1983 should be appointed lead plaintiffs.  Their submissions demonstrate that their chosen counsel is competent, experienced, and qualified to represent the interests of the plaintiff class.

Accordingly, the Court **GRANTS** the Ford Investors Group's motion.

**IT IS ORDERED** that (1) James Emerson; (2) the William T. Higgs Trust;

(3) Power Holding Corporation; and (4) the November Family Trust DD 5/5/1983

are appointed as lead plaintiffs; and

**IT IS FURTHER ORDERED** that the Rosen Law Firm, P.A. and

Pomerantz, LLP are appointed as Co-Lead counsel.

**SO ORDERED**.

Dated:  February 7, 2018        s/Linda V. Parker
                                 U.S. District Court Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 7, 2018, by electronic and/or ordinary mail.

                         s/Julie Owens acting in the absence of Richard Loury
                         Case Manager